Linda PIPON, et al., Plaintiffs,

v.

BURROUGHS–WELLCOME COMPANY,
et al., Defendants.

Civ. No. 81–296.

United States District Court,
D. New Jersey.

Feb. 8, 1982.

Kronisch & Schkeeper by Arthur Miltz, Livingston, N. J., for plaintiffs.

Braff, Litvak, Ertag, Wortmann & Harris by Frederick J. Wortmann, East Orange, N. J., for defendants.

OPINION

BIUNNO, District Judge.

■ This is a products liability suit to recover for personal injury alleged to have been sustained by the daughter of a mother who allegedly ingested a synthetic estrogen, commonly referred to as DES, during pregnancy to prevent spontaneous abortion. It is alleged that as a consequence, the daughter now suffers from cancer. Jurisdiction is grounded on diversity and so this Court sits as though it were the Superior Court of New Jersey in respect to substantive law, *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The suit names and has served one manufacturer as defendant and it alleges that plaintiffs are unable to identify the actual manufacturer whose product was ingested, assuming that DES was ingested at all. This is conceded in the argument, except for the qualification that proof of ingestion would rest on the occurrence of clear cell adenocarcinoma in the daughter. Also conceded is the view of the plaintiffs that, either through their own testimony, the mother's testimony, that is, the physician's testimony and the pharmacist's testimony they are unlikely to succeed in identifying whose product was ingested.

■ Under existing New Jersey law on products liability, it is a specific principle

that a plaintiff must prove, as an essential element of the case, that the defendant manufacturer actually made the particular product accused of having caused the injury, see *Scanlon v. General Motors Corporation*, 65 N.J. 582, 326 A.2d 673 (1974).

In *Lyons v. Premo Pharmaceutical Labs, Inc.*, 170 N.J.Super. 183, 406 A.2d 185 (App. 1979), the mother identified the prescribing physician who in turn identified the medication and said he did not specify a brand. The pharmacist established that the prescription was filled with tablets made by Premo. It was then found that the bulk medication was supplied to Premo by its manufacturer, Specific Pharmaceutical Labs, Inc., through a broker who never had physical control of the product.

Suit was against more than a dozen defendants, among them being Premo, its supplier and the broker, but not Burroughs-Wellcome, the defendant here. All other defendants were granted summary judgment since they were not within the chain of distribution. The case was then settled with Premo and its supplier, but continued against the broker on the theory of strict liability in tort. The opinion does not indicate whether any claim was made against the physician or the pharmacist.

The broker then moved for summary judgment, which was granted on the basis of a finding that the drug did not became dangerous until Premo obtained it, added other ingredients and packaged it into 25 milligram tablets, the dosage used to prevent miscarriage, of which the mother took four a day for twelve days. This ruling made the disposition final as to all parties and plaintiffs then appealed all the summary judgments which were affirmed.

The opinion provides a useful account of the history of DES from its first development in London before 1940. It appears the medication was initially cleared for use, and still is cleared for use, for the treatment of various ailments and as the "morning after" contraceptive. Its use to prevent miscarriage began in the medical profession, which was evidently enthusiastic over it, with many articles published in the medical journals. Clearance for use to prevent miscarriage was applied for in 1947, but the enthusiasm and activity waned in the late 1950's.

In 1971, after reports of a statistical correlation between the use of DES by the mother and the appearance of clear cell adenocarcinoma in daughters aged 14 to 22, the FDA required labeling statements that DES was contraindicated for use in preventing miscarriages.

The Appellate Division affirmed the summary judgments in favor of manufacturers other than Premo and its supplier after considering theories of "concert of action", "joint action", "alternative liability" and the "enterprise theory of liability." The Court carefully analyzed each and all of these theories and rejected them as inapplicable to the case. The summary judgment for the broker was affirmed because the bulk medication did not become dangerous until Premo packaged it as a 25 milligram tablet for use to prevent abortion. This was a matter over which the broker has no control and the *Scanlon* case was relied on for that point.

Another case is *Namm v. Charles E. Frosst and Company*, 178 N.J.Super. 19, 427 A.2d 1121 (App.1981). In that case, 44 defendants were served including Burroughs-Wellcome. The mother identified the physician and the pharmacist. She identified that the medication came as tablets (not capsules) of various sizes, which were white or light in color and none smaller than five milligrams. The pharmacist could only say that he obtained his DES supplies from various sources but could not say whose product was used to fill the prescriptions. What information the physician provided does not appear.

The trial court granted summary judgment as to all 44 defendants and the Appellate Division affirmed. It relied on the requirement of *Scanlon* for proof of actual participation and rejected the theory of alternative liability as inapplicable and the theory of enterprise liability as well. It noted that some 200 or 300 manufacturers had made DES at one time or another, while only 44 of them were in the case.

Plaintiffs here argue that the motion should not be granted but that the case should be placed on a "reserve calendar" until some case involving DES reaches the Supreme Court of New Jersey and is decided. Plaintiffs are confident that the highest court will reverse the requirement that the actual manufacturer be identified. They do not say that a case is now pending there but predict that one will be "in the foreseeable future."

 It is claimed that the *Namm* court itself clearly suggested the likelihood that the highest court would rule otherwise and that it would follow *Ferrigno-Mannix v. Eli Lilly & Company*, 175 N.J.Super. 551, 420 A.2d 1305 (Law, 1980). The Court is urged here to interpret *Erie Railroad v. Tompkins*, not to consider itself bound by the Appellate Division cases, and to forecast that the Supreme Court of New Jersey would rule otherwise.

There are several difficulties with this argument. One is that in *Namm* the Appellate Division was not persuaded by *Ferrigno-Mannix*, which it discusses in footnote 3, and also noted that the ruling merely denied a summary judgment. The other is that *Namm* is grounded on *Scanlon*, a decision of the highest court, which does require proof of the actual manufacturer.*

The passage of *Erie Railroad* relied on applies only when the intermediate court announces a rule, and the federal court is "convinced by other persuasive data" that the highest court will rule otherwise. That is not this case. This case is one where the intermediate state court predicated its decision on a rule of law established by the highest court, and there is no persuasive data, let alone enough to convince this Court, that the highest court will hereafter, sometime, alter its own rule it has already decided.

 Putting aside questions that would need to be faced if the case were allowed to stand, such as whether it can be proven that DES caused the injury claimed, or whether DES was taken at all (and the Court notes that the 1965 PDR identifies medications other than DES to prevent miscarriages and there have long been therapies for the purpose that do not involve medication), or whether, if DES was taken and did cause the injury, whether there would have been a miscarriage rather than a birth and so on, it is plain that plaintiffs cannot prove a case against this defendant under the applicable New Jersey law as laid down by its highest court.

Not only does *Namm* not suggest that the highest court would probably have a different view, but it describes the claim as resting on pure and undisguised speculation, with serious questions of due process of law involved.

Since matters outside the pleadings have been considered, including matters of judicial notice, the motion is granted for summary judgment against plaintiffs and in favor of defendant.

---

* See, also, *Aarnes v. Merck & Co.*, 532 F.Supp. 148 (D.N.J., 1980), *aff'd* CA–3, *sub. nom. King v. Merck & Co.*, CA–3, No. 80–2296, 10/14/81.