604 A.2d 1082

## PENNFIELD CORPORATION

v.

## MEADOW VALLEY ELECTRIC, INC.

v.

**S.A. CLARK & ASSOCIATES, Security Systems Unlimited, Lin M. Allis, Joel Habeggar t/d/b/a Mountain View Farms, Mel Huber, Ray A. Huber, Narragansett Wire Company a/k/a Narragansett Cable Company, York Electrical Supply Co., t/d/b/a YESCO, Tri–State Electrical Supply Co., Inc., F.L. Industries, Inc., Blackburn Division t/d/b/a F.L. Blackburn, Harrisburg Electrical Supply Co. t/d/b/a HESCO.**

**Appeal of MEADOW VALLEY ELECTRIC, INC.**

Superior Court of Pennsylvania.

Argued June 18, 1991.

Filed March 17, 1992.

Denise M. Bierly, State College, for appellant.

Vanessa M. Nenni, Lehigh Valley, for York Elec., appellee.

Before ROWLEY, President Judge, and CAVANAUGH and WIEAND, JJ.

CAVANAUGH, Judge:

Appellant Meadow Valley Electric, Inc. ("appellant"), appeals from the December 13, 1990, order of the trial court sustaining preliminary objections in the nature of a demurrer filed by appellee York Electrical Supply Co., t/d/b/a YESCO ("appellee"). The appellant asserts novel arguments which we find to be pernicious to accepted rules of establishing causation and liability. In particular, appellant's arguments would obviate the well-settled rule that "alternative liability" will not lie absent some sort of negligent conduct by the potential tortfeasors. It asks that we place the burden on potentially innocent defendants to disprove their culpability, and in the event they cannot, to apportion liability between them. We emphatically reject this approach. We affirm the trial court's order sustaining appellee's preliminary objections, but determine that the court erred when it did not allow the complaint to be amended.

This action has its origin in the untimely demise of 1,537 [1] swine, who suffocated when an electrically operated ventilation system in their abode failed. The swine were housed at Mountain View Farms, Berks County, Pennsylvania, and were owned by Pennfield Corporation, the plaintiff in the

---

1. There is disagreement in the briefs as to how many swine suffocated. The number used has been taken from the plaintiff's complaint and appears to be the number used in all documents other than appellant's brief. The exact number is irrelevant to this appeal.

present action.[2]   Pennfield Corporation brought an action against the appellant, the corporation which allegedly performed repair and maintenance services on the electrical equipment at Mountain View Farms.   The Pennfield complaint alleged that a defective electrical system installed by the appellant caused the ventilation system to fail, thus resulting in the suffocation of the swine.

Appellant in turn filed a complaint to join numerous additional defendants including appellee.   Appellant's joinder complaint alleged that the ventilation system failed and that the cause of the failure was defective electrical cable purchased either from appellee or from another distributor, Tri–State Electrical Supply Company ("Tri–State").   Appellant claimed that appellee was liable to the plaintiff on theories of strict liability, negligence, and breach of warranties.[3]

Appellee responded to appellant's joinder complaint with preliminary objections in the nature of a demurrer.   The gravamen of appellee's objections is that to make out a cause of action in strict liability, negligence, or breach of warranties Meadow Valley has to specifically identify which defendant supplied the defective cable.   Appellee notes specifically that appellant in the Strict Liability Count of its Complaint averred the following in paragraphs 115 and 116:

115.   The electrical cable installed at Mountain View was bought either from YESCO or Tri–State.

116.   The electrical cable bought by Meadow Valley from YESCO and Tri–State cannot be identified or distinguished.

Thus, appellee argued that appellant's own admission indicated that a cause of action could not be stated not only for the Strict Liability Count, but the other Counts as well. Appellee asserted that an element of all three counts was

2.   Pennfield Corporation is not participating in this appeal. ⹀

3.   Appellant alleged the same theories of liability against Tri–State as against appellee.   Tri–State answered the complaint but did not file preliminary objections to Appellant's complaint as did the appellee.

that the product could not be identified.[4]   In an order entered December 13, 1990, the trial court sustained appellee's preliminary objections, dismissed with prejudice paragraphs 111–133 of the joinder complaint (i.e., the paragraphs setting forth appellant's claims against appellee), and dismissed appellee from the case.   This appeal followed.[5]

Our scope of review of an order granting preliminary objections in the nature of a demurrer is as follows:

> When preliminary objections in the nature of a demurrer are filed, we must accept as true all the well-pleaded material facts set forth in the complaint and all reasonable inferences deducible from those facts.   Accepting these facts and inferences, we then determine whether the pleader has failed to state a claim for which relief may be granted, and we will affirm the grant of a demurrer only if there is certainty that no recovery is possible.   All doubts are resolved in favor of the pleader.

*Field v. Philadelphia Electric Company,* 388 Pa.Super. 400, 405, 565 A.2d 1170, 1172 (1989).   (Citations and footnote omitted.)

Although the appellant includes four issues in the statement of questions involved, there exists overlap in two issues and thus the questions for our review are essentially three:[6]  (1) whether the "alternative liability" theory of Restatement (Second) of Torts, § 433(B)(3) and *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948) merits that we reverse

4.  We note in passing that the appellant incorporated by reference the averments in the Strict Liability Count, including paragraphs 115 and 116, into the Negligence and Breach of Warranty Counts.   Otherwise, we would be constrained to consider the averments in 115 and 116 only in reference to the Strict Liability Count.   *See* Pa.R.C.P. 1020(c).

5.  We note that an order dismissing all counts against a defendant is final and appealable.   *Motheral v. Burkhart,* 400 Pa.Super. 408, 415, 583 A.2d 1180, 1184 (1990) (en banc).

6.  We note that although appellant appended to its brief a copy of a case thought important to appellant's argument, it failed to append a copy of the trial court's opinion to the brief.   This is expressly violative of Pa.R.A.P. 2111(b).   However, since appellant has enclosed a copy of the trial court opinion at the back of the reproduced record, our ability to conduct a meaningful review is not hindered.

the trial court; (2) whether "alternative liability" will lie where a plaintiff can identify a defective product, all possible defendants have been joined, and inspection of the product would not have uncovered any distinguishable features regarding the product; (3) whether the trial court should have permitted appellant to amend the defective complaint. Although we hold that the the appellant's notions of alternative liability are totally meritless, we believe that the trial court should have allowed appellant to amend its complaint.

We address the two issues dealing with "alternative liability" first. We submit that in attempting to avoid the demurrer, appellant takes a novel, albeit a not very successful, approach. Appellant assumes that appellee is correct when it makes the bald assertion that, at the demurrer stage, the general rule is that a party has to specifically identify the manufacturer to sustain a demurrer.[7] Appel-

---

7. Appellant seems to base its belief on our decision *Cummins v. Firestone Tire and Rubber Co.*, 344 Pa.Super. 9, 18, 495 A.2d 963, 967 (1985). In *Cummins*, a multi-piece tire and rim assembly exploded as it was being inflated, injuring the plaintiff. The actual multi-piece assembly subsequently became irretrievably lost. Plaintiff, since the multi-piece assembly was lost, could not even identify the exact product in the assembly involved in the accident (and by implication the manufacturer or supplier of the assembly). However, plaintiff proceeded to file suit against numerous truck wheel rim manufacturers, manufacturers of trucks, and suppliers of truck and tire rims. We held that since the product could not identified, and there was no indication that a tortfeasor could be determined at trial with any accuracy, that it was appropriate to grant a demurrer as to the manufacturers and suppliers:

> [T]he fact remains that the offending product is unavailable for inspection, and therefore, appellant is precluded from identifying the manufacturer or supplier. This is not a defect which could be corrected by further discovery or by granting appellant leave to amend his complaint, since opportunity to make the necessary identification has been irretrievably lost.

*Id.*, 344 Pa.Superior Ct. at 18, 495 A.2d at 968. This case is clearly distinguishable from the facts *sub judice*. Appellant has been able to specifically identify the potentially offending product to a defective cable. Moreover, as opposed to *Cummins* where the plaintiff had no clue as to the origins of the product, appellant here has narrowed the suppliers down to two. Although the facts of *Cummins* certainly indicated a demurrer was appropriate since no recovery would be

lant's Brief at 7. The appellant, however, argues that there exists a general exception to what it calls the "identification rule," called the "alternative liability" exception. According to appellant, the "alternative liability exception to the identification rule" [8] places the burden on the possible tortfeasors under certain circumstances to prove they are not culpable. As noted *supra*, appellant proffers two arguments as to why "alternative liability" should apply in the case.

The first argument is based on what appellant deems the "alternative liability" theory of Restatement (Second) of Torts, § 433(B)(3) and *Summers v. Tice, supra.* Section 433(B) of the Restatement (Second) of Torts states in its entirety:

**Burden of Proof**

(1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.

(2) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

(3) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each actor to prove that he has not caused the harm.

possible, it is not apparent from the facts here that discovery would prove fruitless in determining the origin of the cable.

8. We have not been able to verify the existence of what appellant deems the "alternative liability exception to the identification rule." Appellant seems to believe "alternative liability" is applicable every time an injured party can narrow the possible tortfeasors down to a limited number of parties who could have potentially caused the injury. As indicated *infra,* "alternative liability" has little to do with identifying a potentially defective product.

The general rule, as noted in subsection (1), is that the burden of proof is upon the plaintiff to show that the tortious conduct of the defendant has caused the particular harm to the plaintiff. The Restatement, however, allows of two exceptions in subsections (2) and (3). Appellant claims the exception articulated in subsection (3) applies. Appellant would have us believe that under subsection (3), because it cannot prove that either YESCO or Tri–State harmed it, the burden is on YESCO or Tri–State to prove that they were not the tortfeasor. This is a mischaracterization of the law. The predicate for applying subsection (3) is that "the conduct of two or more actors is tortious." Restatement (Second) of Torts, § 433(B)(3), *supra.* Subsection (3) is based on the rationale that "injustice [lies in] permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm." Restatement (Second) of Torts, § 433B(3), Comment f. Here, the appellant has not alleged that the conduct of two or more actors is tortious. Rather, appellant asserts one actor may be tortious while admitting the other actor may not be tortious.[9] It is quite obvious from the rule and the rationale that the burden of proof remains on the appellant, and subsection (3), *supra,* does not apply.

We note that Comment g to § 433(B)(3) states:

The rule stated in Subsection (3) applies only where it is proved that each of the two actors has acted tortiously, and that the harm has resulted from the conduct of some one of them. On these issues the plaintiff still has the burden of proof. *The rule stated has no application to cases of alternative liability, where there is no proof that the conduct of more than one actor has been tortious at all. In such a case the plaintiff has the*

9. Appellant asserts in paragraph 115 of its Complaint that: "[t]he electrical cable installed at MOUNTAIN VIEW was bought from *either* YESCO or TRI–STATE." (caps appellant's, emphasis ours)

*burden of proof as to the tortious conduct and as to the causal relationship.*

(emphasis supplied.) It is also pertinent to note that Illustration 10 to § 433(B)(3) presents a hypothetical analogous to this one:

Over a period of three years A successively stores his furniture in warehouses operated by B, C, and D. At the end of that time A finds that his piano has been damaged by a large dent in one corner. The nature of the dent indicates that it was caused by careless handling on a single occasion. *A has the burden of proving whether the dent was caused by the negligence of B, C, or D.* (emphasis supplied.)

This case is also a far cry from the seminal case in this area, the well-known hunting case of *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948). In *Summers v. Tice,* three persons were hunting fowl when suddenly a bird flew from the brush. Notwithstanding that one of the hunters was in close proximity to the brush, the other two hunters simultaneously fired their weapons, accidentally wounding the hunter. In such circumstances, it was impossible for the injured hunter to determine which party caused the injury. The California Supreme Court felt it was appropriate to shift the burden to the two careless hunters to prove which hunter fired the shot. The court emphasized that *both* parties were wrongdoers who had brought about a situation where the negligence of one of them had injured their companion. Either of the two was in a better position to know which of them caused the injury, while the nature of their conduct made it difficult or impossible for the injured party to determine who was liable.

Appellant implicitly admits in its Strict Liability Count that either YESCO or Tri–State bears no culpability whatsoever in bringing about the suffocation.[10] In fact, it is easy to discern from appellant's complaint that it is not sure that a defective cable even caused the suffocation. Thus, unlike in *Summers v. Tice* or the usual alternative liability theory

**10.** *See* note 9, *supra.*

case, appellant cannot with certainty state that YESCO and Tri–State are among the tortfeasors.

■ The second "alternative liability" argument proffered by appellant is based on the Market Share Liability theory first promulgated in the California Supreme Court case *Sindell v. Abbott Laboratories, et al.*, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, *cert. denied*, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980). Therein, the appellant instituted a suit for personal injuries allegedly caused by her mother's use of the drug diethylstilbestrol ("DES") during pregnancy. The pharmaceutical companies which manufactured the drug used a mutually-agreed upon formula. Appellant admitted that she could not identify the manufacturer of the DES her mother consumed.

The California Supreme Court held that a defendant could be liable to this injured plaintiff, notwithstanding that its product was not involved in the accident. The Court stressed two reasons for deviating from the settled rule that manufacturers are only responsible for damages caused by their defective product. First, it was impossible to trace the origin of the product because of the fungible nature of the good. Second, an extensive amount of time had passed between the use of the drug and the manifestation of the plaintiff's injuries. The Court declared that liability would be apportioned according to a defendant's market share, unless a defendant could demonstrate it did not manufacture the DES consumed by the plaintiff's mother.

Although appellant's brief could be clearer, the tenor of appellant's argument is that Pennsylvania has recognized the new ground broken in *Sindell*. Appellant stresses that in *Erlich v. Abbott Laboratories, et al.*, 5 Phila. 249 (1981), a trial court in this jurisdiction relied on the reasoning in *Sindell* to apply the Market Share Liability Theory to a DES case. Appellant claims that one can discern from this and similar cases that Market Share Liability will lie where: (1) all possible tortfeasors have been joined; (2) all conduct is similar; and (3) an inspection of the product would not

have uncovered any distinguishable features regarding the conduct. Appellant's Brief at 11. It is simply not true that Market Share Liability will exist in these circumstances. *Sindell* and *Erlich* reflected a similar concern to that expressed in *Summers v. Tice:* it is not unfair to shift the burden to the defendant pharmaceutical companies where their tortious conduct in marketing an unidentifiable unsafe medicine made an injured party unable to prove causation. It is an essential element in Market Share Liability cases that the possible tortfeasors are all perpetrators of negligent conduct. Even if appellant had alleged the cables were identical, it would still be incumbent on the appellant to prove which defendant was responsible for the defective cable because either YESCO or Tri-State is an innocent party. We should not forget the Market Share Liability theory was created to deal with the horrific problem caused by DES cases, and the Market Share Liability Theory is a very narrow exception to the general rule that a plaintiff must show causation. *See, Hamil v. Bashline,* 481 Pa. 256, 265, 392 A.2d 1280, 1284 (1978); Restatement (Second) of Torts, § 633(B)(1).

We find persuasive reasoning in a federal decision applying Pennsylvania law, *Long v. Krueger, Inc.,* 686 F.Supp. 514 (E.D.Pa.1988), which appellant, surprisingly, claims to be in its favor.[11] In *Long,* the plaintiff was a postal worker hurt while on the job after falling off a defective stool. The metal ring, which is normally positioned around the bottom of stools of that nature, was missing. The Postal Service had bought stools from five different manufacturers. The defendant joined only two of those manufacturers, and asserted it was incumbent on them to prove that they were not culpable. The district court noted that there is a distinction between cases in which defendants are sued who

---

11. We have examined appellant's argument that *dicta* in *Long* by "negative implication" supports its novel theory. Notwithstanding the weakness of an argument that claims the "negative implication" of *dicta* in a federal case is binding on our interpretation of state law, the appellant in any case has relied on an isolated excerpt which does not do justice to the Court's holding.

market an obviously defective drug like DES to consumers where it is difficult to determine the actual tortfeasor because of the way the generic drug is marketed and the run-of-the-mill tort case.

> In the case before me, I am not faced with a highly complex chemical product such as a drug with no means of identification. I am dealing with a broken stool which, if it was basically like one of the stools described in the plaintiff's affidavit, bore the name of its manufacturer. The stool allegedly collapsed because it was defective, which would make it different from the non-defective stools of other manufacturers. Without the alleged defect in the stool, there would be no need for a warning concerning its use when broken. Plaintiff has not pointed to any facts which establish that all manufacturers' stools were similarly defective and in need of warnings. *Here only one defendant acted tortiously, unlike the cases involving ... defective pills in which there is evidence that everyone acted tortiously in a simultaneous and similar manner.* (emphasis supplied.)

*Id.* at 519. We hold that the Market Share Liability theory is not applicable to the circumstances at hand as there is no allegation in the Complaint that appellee and Tri–State were similarly tortious.[12]

Before addressing whether the appellant's complaint should have been allowed to be amended, we feel it is important to comment on why the appellant's theories are pernicious. The appellant's theories would potentially open a Pandora's box of wide-open liability, where an innocent party could be found liable to an injured party just because he cannot *disprove* that he caused the accident. It is crucial to remember that the rules of law articulated in

12. We use "tortious" in the Restatement sense, which appears to be used generically as "similarly a wrongdoer" or "similarly careless." It is obvious that in the *Summers v. Tice* or *Sindell* paradigms that one of the parties, though acting inappropriately, was not the legal cause of a tort to the particular plaintiff. Nevertheless, because that party committed conduct similar to the actual tortfeasor, he is considered "tortious".

*Summers v. Tice* and *Sindell* not only shift the burden to show causation, but assign liability to all the possible tort-feasors when they cannot show one of their number caused the injury. If a tortious actor is not able to show the other actor(s) were the actual tortfeasor(s) under the *Summers v. Tice* rule, he would be *jointly liable* with the other actors. *See, Sommers v. Hessler,* 227 Pa.Super. 41, 46, 323 A.2d 17, 20 (1974). Moreover, under the Market Share Liability theory, defendants who cannot prove their innocence are liable to the plaintiff for *an amount proportionate to the defendant's respective market share* of all sales.[13] *See, Sindell, supra.* Thus, a party that has committed no wrongdoing under the appellant's analysis could potentially be held liable for damages. It is incumbent, therefore, that we do not extend *Summers v. Tice,* § 433(B)(3), or the Market Share Liability theory to the present fact scenario. Our system of jurisprudence rightly balks at assigning liability to a innocent party. Our reluctance has been overcome only when compelling circumstances demand that we deviate from the rule that a cause of action must fail unless defendant's conduct is shown to have been the proximate cause of plaintiff's injury. *See, Summers v. Tice, Sindell, supra.*

We feel the facts of this case highlight the strength of the general rule. We do not have in this case an unfortunate victim of conduct caused by one of several careless parties who know the perpetrator of the negligence, like in *Summers,* or a consumer buying an unidentifiable medicine (DES) from a corporation. Rather, appellant is a corporation which purchased the allegedly defective cable directly from either of two identifiable distributors and which itself performed the repair and maintenance on the farm's electrical system. We submit that as against the appellant and

13. The apportionment of damages heightens why this rule could never be applicable to this situation. It makes little sense to hold an innocent defendant liable to a plaintiff. However, it makes no sense whatsoever to hold the innocent defendant liable to a plaintiff based on its market-share, which very well may exceed the culpable defendant's market share.

the two cable distributors, the appellant is in at least equal position to know from which company it bought the cable. This is especially true because appellant must concede by implication that at this point in time *either* YESCO or Tri-State was entirely blameless.

We address now the appellant's final argument, that the trial court should have allowed the complaint to be amended. Appellant asserts that it can amend his complaint to make alternative liability available. We disagree, for reasons already stated. Notwithstanding, we believe appellant can amend its complaint in other ways to state a viable cause of action.

We declared in *Hoza v. Hoza*, 302 Pa.Super. 72, 78, 448 A.2d 100, 103 (1982):

> We have on numerous occasions found that the right to amend a pleading should not be withheld where there is a reasonable possibility that amendment can be accomplished. In *Harkins v. Zamichieli*, 266 Pa.Super. 401, 405 A.2d 495, 499 (1979), we concluded that even when a complaint is deficient, amendment and not dismissal, is the appropriate remedy. If a demurrer is sustained, 'the right to amend should not be withheld where there is some reasonable possibility that amendment can be accomplished successfully.' *Otto v. American Mut. Ins. Co.*, 482 Pa. 202, 393 A.2d 450 (1978), vacating 241 Pa.Super. 423, 361 A.2d 815. *See also,* [sic] 2 Goodrich Amram, Section 1028(e).

Courts of this Commonwealth have only refused to reverse a trial judge's denial of amendment in rather limited circumstances. Our cases have affirmed a trial judge's denial of amendment only where the plaintiff has repeatedly failed to successfully amend the complaint or is unable to do so. *See, e.g., Kaufman Hotel & Restaurant Company v. Thomas*, 411 Pa. 87, 190 A.2d 434 (1963) (counsel suggested amendments at oral argument which were still legally invalid); *Cucinotti v. Ortmann*, 399 Pa. 26, 159 A.2d 216 (1960) (plaintiff twice failed to plead facts necessary for assault even after court advised why complaint was defective);

*Framlau Corp. v. County of Delaware,* 223 Pa.Super. 272, 299 A.2d 335 (1973) (after two pleadings plaintiff could not suggest facts which would prove a breach of contract). Apparently, this would be the first time appellant has requested to amend its complaint.

The trial court explained that it refused to allow appellant to amend the complaint because it was concerned that the amended complaint would necessarily have to contradict the original complaint's averments. However, the trial court has not presented us with a case that stands for this proposition. As long as the appellant can amend the complaint to make it legally valid, the tenor of our law is to allow the defendant that opportunity. We have traditionally not worried if pleadings were in the alternative or even contradicted each other. Pa.R.C.P 1020(c); *Baron v. Bernstein,* 175 Pa.Super. 608, 106 A.2d 668 (1954). Moreover, this court has not shown reluctance to find a trial court abused its discretion where there was a good chance the complaint could be amended successfully. *Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. 497, 502, 450 A.2d 36, 39 (1982); *Hoza, supra,* 302 Pa.Super. at 79, 448 A.2d at 104. It was error for the trial court not to allow amendment in the case *sub judice.*

The test for surviving a demurrer is "whether it is clear and free from doubt from the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right of relief." *Firing v. Kephart,* 466 Pa. 560, 563–564, 353 A.2d 833, 835 (1976); *Cooley v. East Norriton Twp.,* 78 Pa.Cmwlth. 11, n. 3, 466 A.2d 765, 767 n. 3 (1983). All appellant has to do is to plead facts that, if true, would be legally sufficient to gain him relief from YESCO.[14] It is apparent from appellant's complaint that the genesis of legally sufficient facts is present. Appellant alleges that appellee sold it a cable, the cable was defective, and the cable's defect caused economic damage to appellant's prop-

14. We do not read *Cummins, supra,* to contradict this basic principle. Rather, as discussed in note 7 *supra,* the court in *Cummins* found that it was obvious from plaintiff's pleading that he would not be able to establish legally sufficient facts.

erty.[15] These alleged facts are the seeds for several causes of action.

It is irrelevant at the demurrer stage of our jurisprudence whether appellant alleges precisely the same facts against both appellee and Tri–State. Appellant's complaint can allege, at the same time, in the alternative, that it was a cable distributed by appellee that was defective and that it was a cable distributed by Tri–State that was defective. *Cf.* Pa.R.C.P. 1020(c); *Baron, supra.* Appellant should then have the opportunity to utilize discovery to pin-point which company distributed the allegedly defective cable.[16] However, if after an opportunity to submit all the relevant evidence, the probabilities are at best still evenly divided between the appellee and Tri–State as to causation, it would be the duty of the trial court to dismiss the complaint at an appropriate dispositional stage in the proceedings upon motion by either or both. *See, e.g.,* note 15, *supra.* The trial court's opinion evidences the mistaken belief, to which the appellant has obviously succumbed, that the general rule that a plaintiff has to establish causation requires the plaintiff to offer evidence before discovery and at the time of preliminary objections, which defendant caused the inju-

**15.** Appellant apparently feels that it has to allege some sort of "alternative liability" theory to survive a demurrer at this stage because it cannot determine whether YESCO or Tri–State supplied the allegedly defective cable. However, at this stage of the litigation, appellant only has to allege legally sufficient facts, *even if it cannot prove them at this time.*

What appellant deems is "alternative liability" is a misnomer. Appellant seems to believe "alternative liability" is applicable every time an injured party can narrow the possible tortfeasors down to a limited number of parties who could have caused the injury. However, "[a] mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Restatement (Second) of Torts, § 433(B)(1), Comment a. As explained *supra,* courts have only placed the burden on tortious defendants to absolve themselves of culpability. Thus, the so-called "alternative liability" rule is more appropriately called the "tortious party alternative liability" rule.

**16.** It is not apparent from the record whether appellant engaged in discovery to assist its effort of linking the allegedly defective cable to either appellee or Tri–State.

ry. Although the plaintiff will have to show causation at trial, § 433(B)(1), *supra*, alternative and even inconsistent facts, as long as they are legally sufficient, will survive preliminary objections in the nature of a demurrer.

We affirm the trial court's order as to the preliminary objections, but instruct the trial court to allow appellant the opportunity to amend its complaint.

Case remanded. Jurisdiction is relinquished.