## Mellon v. Barre-National Drug Co.

*Michael B.L. Hepps,* for plaintiffs.
*William M. Connor,* for defendants.

GARB, *J.,* May 5, 1993—We revisit the question of whether market-share liability is an accepted doctrine of liability in Pennsylvania. We determine that it is not. Therefore, we grant summary judgment for the defendants.

We were originally confronted with this question in this case in November 1987. At that time, the defendants had moved for summary judgment. We partially granted and partially denied that motion. As a result of our opinion and order at that time, we dismissed most of the counts of the complaint retaining only the counts alleging negligence and products liability. With respect to those two counts, we retained only the question regarding the doctrine of market share liability as part of this case. See, *Mellon v. Barre-National Drug Co.,* 53 Bucks L. Rep. 23, 27 (1987). Therein, in this regard, we stated the following:

"Lastly, plaintiffs seek recovery based upon market-share liability as enunciated in *Sindell v. Abbott Laboratories, et. al.,* 26 Cal.3d 588, 607 P.2d 924 (1980).

Although there are no Pennsylvania cases specifically holding that this is a theory of liability recognized and accepted in Pennsylvania, neither *Burnside v. Abbott Laboratories, supra,* or *Cummins v. Firestone Tire and Rubber Co. Inc., supra,* or any other case that we know of has, to this date, rejected it. Therefore, on this basis, we will deny summary judgment solely on this theory as applied to Counts I and II of the complaint."

Defendants have now filed this second motion for summary judgment asserting that a reconsideration of those cases cited in the aforesaid quote as well as subsequent authority establishes that market-share liability is not the law of Pennsylvania and that therefore they are now entitled to complete summary judgment.

An in-depth recitation of the facts of this case is not necessary at this time. We incorporate our previous opinion by reference wherein the facts are adequately set forth. Suffice it to say it is alleged that the plaintiffs' decedent died as the result of having ingested repeated doses of syrup of ipecac for the purpose of weight control. This substance is sold over the counter for treatment of some forms of oral poisoning. The substance causes regurgitation which was the manner in which the deceased used it. No substantive evidence was found of any containers in the presence of the deceased, nor were any pharmacies located able to confirm that the deceased purchased it. The only evidence to support this contention regarding her death was the presence of emetine in her body fluids found as a result of the autopsy. That substance is a component of ipecac. It is plaintiff's theory that the formula for syrup of ipecac is identical regardless of the manufacturer. Essentially, it is treated as a generic and fungible substance. Therefore, alleging that it is impossible to determine the manufacturer of the substance

ingested by the decedent, it is alleged that the plaintiff can recover based upon the theory of market share.

As previously noted, the doctrine of market-share liability had its genesis in *Sindell v. Abbott Laboratories, supra,* which was followed shortly thereafter in *Martin v. Abbott Laboratories,* 102 Wash. 2d 581, 689 P.2d 368 (1984). Both of those cases were DES cases. DES is the abbreviation for diethylstilbestrol, a prescription drug that was used some time ago for the purpose of preventing miscarriages. It was subsequently determined that babies, particularly female, born as a result of pregnancies wherein this drug was administered to the pregnant mother were prone to contract various forms of cancer. This, however, only became apparent after the child reached puberty or later. Therefore, in view of the fact that DES was essentially a generic drug produced by many manufacturers, it is virtually impossible for any of these children who contracted cancer to establish the identity of the manufacturer. Therefore, both the *Sindell* and the *Martin* cases enunciated the market-share liability theory. On that basis, any manufacturer who sold DES in the market in which it was administered to the pregnant mother of one of the afflicted persons would share in payment of the verdict to the extent of its percentage of the market. Pennsylvania has never adopted this theory.

*Ehrlich v. Abbott Laboratories,* 5 Phila. Rep. 249 (1981) was a DES case in which defendant manufacturers sought summary judgment. The court, in that case, denied summary judgment by application of section 433(B)(3) of the Restatement (Second) of Torts. As we noted in our previous opinion, that theory of liability had been adopted in Pennsylvania by virtue of *Snoparsky v. Baer,* 439 Pa. 140, 266 A.2d 707 (1970) and *Sommers v. Hessler,* 227 Pa. Super. 41, 323 A.2d 17 (1974). We held that

that theory does not cover the circumstances of this case. That section, in relevant part, provides as follows:

"Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which has caused it, the burden is upon each such actor to prove that he has not caused the harm."

In *Snoparsky, supra,* the plaintiff was injured when she was struck in the eye as she was playing with a group of children at a construction site. The children were all throwing stones and one of them struck the minor plaintiff in the eye. In view of the fact that she was unable to identify which of the several youngsters had thrown the stone which struck her, the court allowed her to establish liability on the theory of section 433(B) of the Restatement. It is clear, in that case, that the harm was caused to the plaintiff when two or more actors were committing tortious acts, the harm was caused by only one of them, and there was uncertainty as to which one caused it.

*Sommers v. Hessler, supra,* was a similar case where the plaintiff was injured while on a school bus as a result of a spit ball battle waged by a number of the other minor passengers. Another example of this theory of liability is a situation where two hunters standing close to one another shoot what they perceive to be an animal notwithstanding the fact a person is hit and injured. Under those circumstances, where it would be impossible to determine which of the hunters fired the injuring shot, the burden then shifts to those defendants to prove non-culpability under the doctrine of this section of the Restatement. Obviously, both of the defendants were acting tortiously, but there is uncertainty as to which one caused the injury. Therefore, the burden would be upon the actors to prove that they had not caused the harm.

The court in *Ehrlich* applied this doctrine to the DES case. In doing so, the court speaks in terms of *Sindell* and *Martin.* We believe that the Philadelphia Court has confused these doctrines and we choose, therefore, not to follow it. We do not believe that a group of manufacturers producing a generic and fungible product, but not in conjunction or cooperation with one another, fits within the theory of section 433(B) of the Restatement of Torts.

*Burnside v. Abbott Laboratories,* 351 Pa. Super. 264, 505 A.2d 973 (1985) was a DES case. That case was instituted on several different theories of liability, including civil conspiracy, concerted action, enterprise liability, and market-share liability. We addressed all of those theories in our previous opinion and granted summary judgment on all of them with the exception of market-share liability. Therein, the Superior Court recognized that the Supreme Court of Washington articulated a new concept for allowing recovery in DES cases in *Martin v. Abbott Laboratories, supra.* The Superior Court likewise acknowledged that this theory has not been adopted by the courts of Pennsylvania. However, the court did undertake to consider it to determine whether the facts in *Burnside* would support such a cause of action. The court then stated:

"We consider it here to determine whether the facts in this case would support such a cause of action. Because the facts alleged and shown during discovery are insufficient to sustain a cause of action as stated by the Washington court, *we find it unnecessary to decide whether such a theory should be adopted in Pennsylvania." Burnside v. Abbott Laboratories, supra* at 287, 505 A.2d at 985-86. (emphasis added)

In citing to the *Martin* opinion, the Superior Court stated that in order to state a cause of action for market-share alternate liability:

"[a] DES plaintiff must allege the following elements:

"(1) that the plaintiff's mother took DES;

"(2) that DES caused the plaintiff's subsequent injuries;

"(3) that the defendant produced or marketed the type of DES taken by the plaintiff's mother; and

"(4) that the defendant's conduct in producing or marketing the DES constituted a breach of a legally recognized duty to the plaintiff." *Burnside v. Abbott Laboratories, supra,* at 287-88, 505 A.2d at 986.

The Superior Court then affirmed grant of summary judgment in favor of this group of defendants because they had exculpated themselves by facts which showed that they had never manufactured or marketed DES as a miscarriage preventative, or demonstrated that they had not manufactured DES during the period in which plaintiff's mother used the drug. Others showed that they had never marketed DES in Pennsylvania. Therefore, based on those facts, the court did not have to determine specifically whether market-share liability applied in Pennsylvania to DES cases.[*]

In *Cummins v. Firestone Tire & Rubber Co.,* 344 Pa. Super. 9, 495 A.2d 963 (1985), the plaintiff was injured when a tire rim exploded and struck him while a tire was being replaced in a repair shop. One theory of liability was products liability regarding the tire rim. Because of the fact that it was impossible to identify the manufacturer of this particular rim, the plaintiff sought to establish liability by joining all manufacturers under the market-share liability. The Superior Court therein de-

---

[*] It is interesting to note that the Superior Court made no mention of *Ehrlich, supra.*

clined to apply the doctrine of market-share liability. The court acknowledged the theory enunciated in *Sindell v. Abbott Laboratories, supra,* on the basis that DES was impossible to trace to its source in light of its fungible nature and the resultant absence of any identifying labeling on the containers in which the drug was dispensed to consumers. Second, it was acknowledged that appellant's attempts to identify the manufacturer were hampered by the extensive period of time between the use of the drug and subsequent manifestation of her injuries. It was stated in *Cummins* that the court's holding in *Sindell* was predicated upon the specific facts found therein, specifically, plaintiff's inability to identify the manufacturer of the DES which caused her injuries "through no fault of her own." The court referred to the fact that plaintiff's inability to identify the manufacturer of the multipiece rim assembly was not the fault of the producers of that product.

Finally, in *Cummins,* the court stated that it was confronted with a cause of action novel to the courts of Pennsylvania. It then acknowledged *Ehrlich v. Abbott Laboratories, supra,* but pointed out, as we have previously, that *Ehrlich* was decided on the basis of section 433(B)(3) of the Restatement (Second) of Torts and not under the doctrine of market-share liability, in spite of the fact that the *Ehrlich* court relied upon many of the factors set forth in *Sindell.*

*Eckenrod v. GAF Corp.,* 375 Pa. Super. 187, 544 A.2d 50 (1988) was an asbestos case in which the plaintiff was unable to identify with specificity the manufacturer of the asbestos product to which he was exposed. Under these circumstances, the asbestos cases are not totally dissimilar from the factual matrix of the case before us. Therein, however, the Superior Court stated as follows:

"In order for liability to attach in a products liability action, plaintiff must establish that the injuries were caused

by a product of the particular manufacturer or supplier. *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975). Additionally, in order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. *Wyble v. Keen Corp.,* no. 86-1451 slip op. (E.D. Pa. August 19, 1987); *Anastasi v. Pacor Inc.,* no. 6251 (C.P. Phila., March 8, 1983). Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. *Pongrac v. Consolidated Rail Corp.,* 632 F. Supp. 126 (E.D. Pa. 1986). Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of plaintiff's injury. See, *Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983)." *Eckenrod v. GAF Corp., supra,* at 190-91, 544 A.2d at 52.

The Superior Court affirmed the grant of summary judgment where plaintiff was unable to prove that the asbestos fibers he inhaled were produced by the named defendants.

Lastly, in *Pennfield v. Meadow Valley Electric Inc.,* 413 Pa. Super. 187, 604 A.2d 1082 (1992), the Superior Court refused to apply the market-share theory where plaintiff's chickens had been smothered when a ventilating machine had failed to operate due to a defective cable. The plaintiff was unable to identify the manufacturer of the cable and therefore sued the two known manufacturers of that product. The Superior Court refused to apply the doctrine, holding that to do so would possibly result in a non-tort-feasor being held liable for damages which he did not cause. Clearly, this case is not on point. However, market-share was discussed. In addressing that, admittedly in dictum, the court stated as follows:

"Even if appellant had alleged the cables were identical, it would still be incumbent on the appellant to prove which defendant was responsible for the defective cable because either Yesco or Tri-State is an innocent party. *We should not forget the market-share liability theory was created to deal with the horrific problem caused by DES cases, and the market-share liability theory is a very narrow exception to the general rule that a plaintiff must show causation.* See, *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978)." *Pennfield v. Meadow Valley Electric Inc.* at 197, 604 A.2d at 1087. (emphasis added)

Thus, as the foregoing demonstrates, the market-share liability theory has never been accepted as the law of Pennsylvania. Even if it should be adopted in the future, we do not believe it would apply to the facts of this case. The DES cases are unique. The tortious conduct occurs while the plaintiff is in utero. The injury is manifest many years later. The offending drugs are generic. When they were administered, it was as a result of a prescription, written by a doctor, filled by a pharmacist. Neither the pregnant mother or the eventual offspring has any way of establishing the manufacturer of those particular dosages. It is through no fault of the plaintiff that this becomes the case.

With respect to the case before us, the drug is likewise a generic or fungible one. However, it is sold over the counter in a package identifying the manufacturer. Assuming for purposes of this motion, that the cause of death is as alleged by the plaintiff, it would have not have occurred in an inordinately extended period of time after the offending substances were ingested. Furthermore, under usual circumstances, there is evidence readily available to the injured party regarding the source of these substances. In most cases, eyewitnesses would observe

the ingestion, the containers would be found in and about the effects of the injured party, and pharmacists can be located who sold the substance in question. It is the theory of the plaintiff that the decedent was extremely secretive about obtaining and ingesting this substance and therefore destroyed all evidence of it. However, as noted in *Cummins,* one of the specifics of the holding of *Sindell* was that the lack of identification of the manufacturer must be through no fault of the plaintiff. Furthermore, plaintiff's inability to identify the manufacturer was not through any fault of the manufacturer, but rather, specifically, through the fault of the decedent. See, *Cummins v. Firestone Tire & Rubber Co., supra.*

For the foregoing reasons, we are satisfied that market-share liability is not the law of Pennsylvania, and even if it were, it would not apply to the facts of this case. For this reason, we hereby grant summary judgment for all defendants.

### ORDER

And now, May 5, 1993, it is hereby ordered that summary judgment is entered in favor of all defendants.