J-A08012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CATHERINE CHASE, EXECUTRIX OF THE ESTATE OF THELMA JENKINS, DECEASED, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 2254 EDA 2019 |
| ADULT DAY SERVICES AND MED TRANSIT LLC | : : : : | |
| v. | : : : | |
| DRENA SCOTT AND HANDS FROM THE HEART MANAGEMENT INC. D/B/A HANDS FROM THE HEART HOME HEALTHCARE SERVICES | : : : : | |

Appeal from the Judgment Entered October 9, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): January Term, 2017 No. 04592

BEFORE: LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.: **FILED AUGUST 03, 2020**

Catherine Chase, in her capacity as Executrix of the Will of Thelma Jenkins, Deceased ("Chase"), appeals from the judgment, entered in the Court of Common Pleas of Philadelphia County, after the trial court granted a non-suit in favor of appellees, Adult Day Services, Med Transit, LLC ("Med Transit"), Drena Scott ("Scott"), and Hands from the Heart Management, Inc.,

d/b/a Hands from the Heart Home Healthcare Services ("Hands from the Heart"). Upon careful review, we affirm.

The Honorable Ann M. Butchart set forth the facts of this matter as follows:

Thelma Jenkins [("Jenkins")], [Chase's] great aunt, age ninety[-]three, suffered from multiple health conditions[,] including dementia. [Jenkins] lived with [Chase] and received home health care from additional defendants Hands from the Heart. She also attended day care at defendant Adult Day Services' [D]ay [C]are [C]enter. Defendant Med Transit transported [Jenkins] to and from [] Adult Day Services' care center.

On or around April 19, 201[6], [Jenkins] sustained a head contusion and leg fractures. Her dementia affected her ability to speak, and she could not state what happened to her, where, or when.

On the morning of April 19, 2016, a Hands from the Heart worker named Ann was [Jenkins'] assigned morning caretaker. When [Chase] left for work that morning, [Chase] testified that [Jenkins] appeared "fine."

[Chase] presented no factual evidence for [what happened during] the period between [Chase's] departure for work[] and [Jenkins'] return home.

Additional defendant [Scott] testified she was on duty on the evening of April 19, 2016, when the Med Transit van drove [Jenkins] home. She testified she helped the Med Transit driver escort [Jenkins] into the house. Thereafter, [Scott] discovered the head injury and called [Chase], who was on her way home from work. [Chase] recalled [Scott's] description as "lumps [on] [Jenkins'] head[.]" [Scott] recalled noticing blood inside [Jenkins'] wig. [Chase] testified that[,] after arriving home, she called Mohammed Keita (["Keita"]), the owner of defendant Med Transit. She testified that [Keita] came to the house, and advised [Chase] that the Med Transit driver had told him "nothing happened." [Keita] left and returned with a van to transport [Jenkins] to the hospital. In addition to the head injury, [x]-rays taken at the hospital revealed that [Jenkins'] leg sustained a tibia

and fibula fracture. [Jenkins] was hospitalized for several days for observation.

[Jenkins] died of unrelated natural causes on May 11, 2018.

Trial Court Opinion, 11/8/19, at 3-4 (citations to record and unnecessary capitalization omitted).

On February 2, 2017, Jenkins commenced an action alleging negligence against Adult Day Services and Med Transit. On June 19, 2018, Chase was substituted as plaintiff upon the death of Jenkins. Scott and Hands from the Heart were subsequently joined as additional defendants upon motion of Med Transit. On August 2, 2018, Chase filed a second amended complaint—the operative complaint in this case—asserting wrongful death and survival causes of action. Following the denial of summary judgment motions filed by Med Transit and Adult Day Services, the matter proceeded to trial on April 1, 2019. At the close of Chase's case, Med Transit, joined by Adult Day Services and Hands from the Heart, moved for a compulsory non-suit, which the trial court granted. On April 12, 2019, Chase filed a motion to remove the non-suit, which the court denied on June 21, 2019, after oral argument. Chase filed a timely notice of appeal, and both she and the trial court have complied with Pa.R.A.P. 1925.

Chase raises the following claims for our review:

1. Whether [Chase] offered evidence, in the form of ample testimony, the believability of which was for the jury, from [Chase's] witnesses, exhibits, medical records, photographs, and testimony of additional defendant [] Scott, sufficient to proceed to a jury in [her] claims against defendant[s] Med Transit[ and Adult Day Services].

2. Whether the trial court erred in granting non-suit because [Chase] did not have the burden of proof in this case [pursuant to the theory of alternative liability established in **Summers v. Tice**, 199 P.2d 1 (Ca. 1948), and adopted in Pennsylvania in **Snoparsky v. Baer**, 266 A.2d 707 (Pa. 1970)].

3. Whether the trial court erred when it sustained the trial objection of defendants that [Chase's] expert Nurse Ingrid Sidorov had not been qualified as an expert in "safety transportation," thereby precluding [her] further expert testimony on the topic[s] of duty, breach, and causation as [they] relate[] to her proper field of expertise.

4. Whether the trial court erred when it applied the "four corners" doctrine to the scope of permissible opinion testimony pertaining to the transportation logs.

Brief of Appellant, at 5-8 (some issues combined and/or restated for brevity and ease of disposition; unnecessary capitalization omitted).

Chase's first two claims allege that the trial court erred in granting a non-suit as to Med Transit and Adult Day Services, as Chase presented ample evidence to allow the case to go to the jury. In reviewing the entry of a non-suit, our standard of review is abuse of discretion or error of law. **Kovalev v. Sowell**, 839 A.2d 359, 368 (Pa. Super. 2003).

A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff['s] evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury. When this Court reviews the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered.

- 4 -

> A compulsory non-suit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff.

**Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.**, 40 A.3d 1261, 1274 (Pa. Super. 2012), quoting **Poleri v. Salkind**, 683 A.2d 649, 653 (Pa. Super. 1996).

Here, Chase asserted negligence on the part of Med Transit and/or Adult Day Services. "Generally, to establish a cause of action of negligence, the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff and the plaintiff suffered an actual loss or damage." **Brezenski v. World Truck Transfer Inc.**, 755 A.2d 36, 40 (Pa. Super. 2000). Dismissal is proper if the plaintiff does not aver sufficient facts to establish all the elements of a claim. **Lerner v. Lerner**, 954 A.2d 1229, 1234–35 (Pa. Super. 2008).

Here, the trial court did not abuse its discretion or commit an error of law in finding that Chase presented insufficient evidence as to what occurred to Jenkins, when it occurred, or where it occurred and, as such, could establish neither breach nor causation. **See** Trial Court Opinion, 11/8/19, at 7. At trial, Chase testified that she had no idea how her aunt sustained the injuries to her head and leg. **See** N.T. Trial, 4/1/19, at 55. She presented no evidence as to what happened during the period when she left for work and when Med Transit picked up Jenkins. Chase further indicated her belief that Adult Day Services was not responsible for her aunt's injuries and, in fact, testified that

she continued to send her aunt to Adult Day Services even after the incident. *See id.* at 40-41. Drena Scott—who was present when Med Transit dropped Jenkins off at home on the day of the incident and assisted the driver in lifting her wheelchair up the front steps—testified that she did not know whether anything had happened in the Med Transit van and that nothing happened when she and the Med Transit driver lifted Jenkins up the stairs. *Id.* at 136-37, 146. The blood she observed on Jenkins was not fresh, but rather dried. *Id.* at 137. Scott had no idea how long the bump on Jenkins' head had been there. *Id.* at 138. Thomas Scheuerman, D.O., who treated Jenkins at the hospital on the night of the incident, testified that he had no way of ascertaining the age of Jenkins' injuries. *See* Scheuerman Deposition, 3/28/19, at 86-87. Nurse Sidorov was also unable to shed any light on where, when, or how the injuries occurred, testifying as follows:

> Q: Are you able today to pin down . . . whose care [Jenkins] was under when something happened?
>
> A: No.
>
> . . .
>
> Q: You are also unable . . . to tell us where the incident or incidents took place, correct?
>
> A: Correct.
>
> Q: How the incident or incidents took place, correct?
>
> A: Correct.
>
> Q: The time of day that the incident or incidents took place?
>
> A: Correct.
>
> Q: Whether it occurred in transit or whether it occurred at a facility, correct?

A:  Correct.

N.T. Trial, 4/2/19, at 54, 108.  Notably, Chase presented no testimony from any employees of either Med Transit or Adult Day Services.

With regard to Med Transit, Chase argues that Nurse Sidorov's "[t]estimony at trial plainly established for the jury's consideration that the standard of care in . . . picking up, loading, transporting, unloading, and dropping off, is such that [] Jenkins requires two persons."  Brief of Appellant, at 30.  However, this claim is not supported by the record.  Nurse Sidorov, opined that, while two people are required to carry a wheelchair-bound person up steps, only one person is required to load the individual into a van:

> Q:  How many people does it take to put an elderly person in a wheelchair strapped into a van?
>
> A:  One.
>
> Q:  Okay.  If one person did that, is that reasonable?
>
> A:  Yes.
>
> . . .
>
> Q:  On the day of this incident, two people carried her up the steps, correct?
>
> A:  Yes.

N.T. Trial, 4/2/19, at 123-24.  Thus, under the standard as articulated by her own expert, Chase can establish no breach of the standard of care as to Med Transit.  In fact, Nurse Sidorov did not identify anything that either defendant did or did not do that constituted a breach of the standard of care.  Instead, she merely presumed that something had to have happened.

As the trial court aptly noted in its opinion,

Permitting the case to go to the jury on such a limited evidentiary record would require the jury to speculate that *something* occurred while [Jenkins] was in the care of either [] Adult Day Services or [] Med Transit that fell below the standard of care, and that caused her injuries. . . . [Chase] presented no evidence of any conduct of either [] Med Transit or [] Adult Day Services between the morning pickup and evening drop-off [that failed to meet the requisite standard of care]. Thus, the record was devoid of evidence of breach or causation for either [defendant]. The failure to adduce evidence of breach of the standard of care or causation is grounds for a compulsory non[-]suit.

Trial Court Opinion, 11/8/19, at 7 (emphasis in original).

We agree with the trial court that, based on the dearth of evidence presented by Chase that either Med Transit or Adult Day Services breached any standard of care and/or caused Jenkins' injuries, this case was ripe for the entry of a non-suit.[1]

_____

[1] We note that Chase's counsel conceded that the doctrine of *res ipsa loquitur* was inapplicable to this case and, thus, the jury could not be allowed to infer a breach of the standard of care. **See** N.T. Trial, 4/2/19, at 170 ("[Plaintiff's Counsel]: [T]his is not a *res ipsa* case. It's a circumstantial evidence case, a causation by virtue of circumstantial evidence."). We agree that Chase would not have been entitled to an instruction on *res ipsa loquitur*. Under that doctrine, the finder of fact may infer that harm suffered by the plaintiff is caused by negligence of the defendant when: (1) the event is of a kind which ordinarily does not occur in the absence of negligence; (2) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (3) the indicated negligence is within the scope of the defendant's duty to the plaintiff. **Quinby v. Plumsteadville Family Practice, Inc.**, 907 A.2d 1061, 1071 (Pa. 2006). Even conceding that Chase satisfied elements one and three of the doctrine, the evidence adduced at trial failed to eliminate "other responsible causes," i.e., Chase failed to sufficiently eliminate either Adult Day Services or Med Transit as the responsible party. In his dissent, Judge McCaffrey analogizes this case to

- 8 -

Chase also argues that she was entitled to present her case to the jury under the theory of alternative liability. This doctrine is an exception to the general rule that the plaintiff bears the burden of proof as to all elements of negligence and was first established in Pennsylvania in **Snoparsky v. Baer**, 266 A.2d 707 (Pa. 1970). In **Snoparsky**, our Supreme Court adopted the theory of alternative liability as set forth in **Summers v. Tice**, 199 P.2d 1 (Cal. 1948), and section 433B(3) of the Restatement (Second) of Torts. This doctrine dictates that tortfeasors who act in concert will be held jointly and severally liable for the plaintiff's injury unless the tortfeasors are able to prove that they have not caused the harm.[2] **Skipworth by Williams v. Lead**

_____

**Quinby** and **Jones v. Harrisburg Polyclinic Hosp.**, 437 A.2d 1134, 1137 (Pa. 1981). Both of those cases are inapt. In **Quinby**, our Supreme Court held that a *res ipsa loquitur* instruction was appropriate where a quadriplegic was injured when he fell from an examination table following a procedure. There, however, there was no question that the defendants' actions were the cause of the plaintiff's fall. In **Jones**, multiple doctors performed three consecutive procedures on the plaintiff. When the plaintiff awoke, she was found to be suffering from nerve palsy. The trial court gave a *res ipsa loquitur* instruction. This Court reversed and granted a new trial. On allowance of appeal, the appellee physician argued that plaintiff had not satisfied the second element of *res ipsa loquitur* because the evidence did not, as a matter of law, eliminate a second doctor as an "other responsible cause." However, appellee conceded that he had participated in the laproscopy performed by the second doctor and admitted that he had been responsible for the plaintiff "neurologically" throughout the entire operation. Accordingly, the Court found that "[a]t best, [appellee and the non-party doctor] shared joint responsibility[.]" Thus, **Jones** is also distinguishable on its facts and does not mandate reversal in this case, in which a verdict against either defendant would have been based on sheer speculation.

[2] In **Snoparsky**, plaintiff brought suit on behalf of a child who had been struck by stones thrown by other children at a construction site. The original

- 9 -

***Indus. Ass'n, Inc.***, 690 A.2d 169, 174 (Pa. 1997). The rationale underpinning this theory that, where multiple wrongdoers bring about a situation where the negligence of one of them injures a third party, the wrongdoers are in a better position to know which of them caused the injury, where the nature of their conduct makes it difficult or impossible for the injured party to determine who was liable. ***Pennfield Corp. v. Meadow Valley Elec., Inc.***, 604 A.2d 1082, 1086 (Pa. Super. 1992). The predicate for applying the doctrine of alternative liability is that "the conduct of two or more actors is tortious." ***Id.*** at 1085, quoting Restatement (Second) of Torts, § 433B(3). Thus, the burden remains on the plaintiff to prove that each actor's conduct was tortious; only then will the burden shift to the wrongdoers to disprove causation. ***Id.*** Where there is no proof that the conduct of more than one actor has been tortious at all, the plaintiff retains the burden of proof as to the tortious conduct *and* as to the causal relationship. Restatement (Second) of Torts, § 433B(3), comment (emphasis added).

_____

defendants were the landowners where the incident occurred, and the construction company involved in the construction project. The original defendants joined all of the children who had engaged in the stone throwing, on the ground that one or more of them had to be liable for the minor plaintiff's injuries, even though the responsible child could not be identified. The Supreme Court held that inability to identify the individual tortfeasor did not defeat the cause of action. Rather, citing both section 433B of the Restatement (Second) of Torts and ***Summers***, the Court concluded that each child engaged in the stone throwing would bear the burden of demonstrating that his or her conduct had not brought about the plaintiff's injuries.

Here, Chase cannot avail herself of relief under the theory of alternative liability as she has failed to establish negligence on the part of either Med Transit or Adult Day Services. **Pennfield Corp.**, **supra**.

Chase next asserts that the trial court abused its discretion in granting Med Transit's motion to disqualify Nurse Sidorov as an expert in medical transportation. Decisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court. **Turney Media Fuel, Inc. v. Toll Bros., Inc.**, 725 A.2d 836, 839 (Pa. Super. 1999). We may reverse only if we find an abuse of discretion or error of law. **Id.**

Nurse Sidorov was offered by Chase as an expert in geriatric care. Following Chase's *voir dire* questioning of Nurse Sidorov, counsel for Med Transport requested a sidebar, at which time he argued that Nurse Sidorov should be precluded from testifying as an expert in "medical transportation." **See** N.T. Trial, 4/2/19, at 34-37. The court denied that motion. Thereafter, during *voir dire* cross-examination by counsel for Med Transit, the following exchange occurred:

> Q: So, Ms. Sidorov, you're not an expert in medical transportation, correct?
>
> A: Correct.

**Id.** at 42. Thereafter, at sidebar, counsel for Med Transit renewed his objection to the qualification of Nurse Sidorov as an expert in "medical transportation." Based on Nurse Sidorov's statement that she was not an

expert in that area, the court reversed course, ruling that any testimony by Nurse Sidorov on that topic would be deemed fact, not expert, testimony.

On appeal, Chase argues that, despite the court's ruling, Nurse Sidorov was allowed to "testify as to the standard of care and causation pertaining to medical transport and transfer of the elderly," and "agreed with the rule of [Chase] and Adult Day Services requiring that the wheelchair lap belt be used when [] Jenkins was in the wheelchair." Brief of Appellant, at 45. However, Chase argues that

> in another context[,] Nurse Sidorov was precluded by the trial court from testifying on a line of questioning as to medical transport as it falls properly under her expertise in geriatric care. It is *this* ruling that [Chase] complains of in the instant post-trial motion [*sic*]. [Chase] was eliciting testimony within the scope of expertise of Nurse Sidorov to flesh out her earlier testimony about the standard of care in geriatric transport, and the trial court sustained an objection.
>
> Here is the context:
>
> > Q (Plaintiff's counsel): Can everything be anticipated that might happen in the standard of care or is that overall standard of care to keep the patient safe?
> >
> > A (Nurse Sidorov): To keep the patient safe.
> >
> > Q: Now, are the standards of care for Med Transit or any transportation drivers different standards than they would be for somebody who's not transporting—
> >
> > > [Defense counsel]: Objection. Goes outside the expertise of Ms. Sidorov, who is not an expert in safety transportation as she even testified to."
> > >
> > > THE COURT: Sustained.

Brief of Appellant, at 46-47, quoting N.T. Trial, 4/2/19, at 157.

Chase claims the trial court was wrong to sustain the objection for three reasons. First, Chase's counsel had not finished asking her question and, thus, the objection was not "ripe." Second, contrary to defense counsel's characterization, Nurse Sidorov never testified that she was not an expert in "safety transportation." Third, defense counsel mischaracterized the trial court's prior rulings as to the scope of Nurse Sidorov's expert testimony. Specifically, Chase asserts that the court "ruled that Nurse Sidorov could testify as to the standard of care for medical transportation only insofar as it fell within the ambit of her decades of expertise and training in geriatric care, and that she could *not* testify as to the standard of care in transport simpliciter*."* Brief of Appellant, at 47-48. Chase's arguments are disingenuous and meritless.

The trial court did not abuse its discretion in ruling that Nurse Sidorov was not competent to testify as an expert in medical transportation *after Nurse Sidorov herself conceded that she was not an expert in that area*. Moreover, Chase's assertion that the court's ruling as to Nurse Sidorov's qualifications only applied to transportation in general, rather than medical transportation, is a pedantic mischaracterization of the court's intent.[3] General transportation was not an issue in this matter and Chase did not attempt to qualify Nurse

---

[3] The trial court used the following language in rendering its ruling on Nurse Sidorov's ability to testify as an expert in the field of medical transportation: "Ms. Sidorov's testimony, if any, [on] the subject of transport will not be deemed to be expert testimony. It will be fact testimony and nothing more." N.T. Trial, 4/2/19, at 44. While the court did not use the word "medical" to modify "transport," the court's meaning is abundantly clear from context.

Sidorov as an expert in general transportation. Similarly, the fact that defense counsel used the term "safety transportation" rather than "medical transportation" in objecting to Chase's question on redirect is irrelevant. Counsel's meaning is obvious when viewed in the context of his objection and of the case in general. Accordingly, we reject Chase's attempt to create a substantive legal distinction based on counsel's choice of phrasing. Finally, Chase concedes that, despite the court's limiting directive, "Nurse Sidorov did indeed testify as to the standard of care and causation pertaining to medical transport and transfer of the elderly." Brief of Appellant, at 45. Accordingly, Chase can establish no prejudice resulting from the court's ruling. For all the foregoing reasons, Chase is entitled to no relief on this claim.

Finally, Chase asserts that the trial court erred in barring Nurse Sidorov from testifying regarding her opinion of Med Transit's transportation logs. Chase asserts that the logs contained "numerous indicia of artificiality or fabrication, such as different ink and penmanship, and who was present in the vehicle, and false data as well; this is for the jury." Brief of Appellant, at 52. Chase asserts that Nurse Sidorov would have testified that these inconsistencies in the logs were "evidence for the jury to consider of negligence and breach, causing damages." *Id.* at 51. Because Chase's claim is belied by the record, it is meritless.

On direct examination, Chase's counsel elicited the following testimony from Nurse Sidorov with respect to Med Transit's logs:

Q: In your review of the transit logs for Adult -- Med Transit, did you review -- did you see any report of any incident or happening that occurred during the transit of Thelma Jenkins that day?

A: No.

. . .

Q: Did you review the transit logs from Med Transit?

A: Yes, for the two days, the 18th and 19th of April 2016.

Q: I'm just going to hand you what has been marked as Plaintiff's Exhibit 13 for identification purposes only.

MR. MOORE: May we see a copy?

BY MS. TURNER:

Q: I'm asking you to look at --

MS. TURNER: Can you put it up on the screen, please. It's for the 19th. We'll start with the 18th.

THE WITNESS: That's the 18th.

Q: I'm asking you to look at that. Do you see Thelma Jenkins' name on the left-hand side?

A: Yes.

Q: Do you see on the right of that where she was picked up from that morning?

A: Yes.

Q: What is that?

A: That's 2020 South 23rd Street, Philadelphia.

N.T. Trial, 4/2/19, at 57-59.

As the quoted excerpts from the transcripts show, counsel's questions regarding Med Transit's lots were all asked and answered without objection from defense counsel. Chase's counsel then posed the following question:

Q: Were you able to ascertain the address of Adult Day Services *yesterday when you were listening to testimony*?

A: Yes. I believe it's in Upper Darby.

MR. SILVERMAN: Objection, your Honor. This witness is here as an expert witness. She is bound by the four corners of her report; not what she heard in the courtroom yesterday.

MS. TURNER: I am asking her about her review of the Med Transit logs.

THE COURT: What was the question?

* * *

(Whereupon the preceding question was read back by the Official Court Reporter)

* * *

THE COURT: I will sustain the objection. The witness is bound by the four corners of her report.

MS. TURNER: *I will address this with another witness*.

*Id.* at 59-60 (emphasis added).

Clearly, Chase was allowed to question Nurse Sidorov regarding the transit logs, without objection, and the logs were published to the jury. Only when counsel asked Nurse Sidorov to answer a question based on observations she had made *in the courtroom*, rather than based on materials she reviewed in preparing her report, did defense counsel lodge an objection. The court sustained that objection *not* because it involved the transit logs, but rather on the basis that Nurse Sidorov's courtroom observations were not contained within the four corners of her report. Accordingly, counsel would have been free to proceed with additional questions based on the transit logs, but counsel opted not to do so. Instead, she indicated that she would address

- 16 -

the issue with another witness and moved on to another line of questioning. Chase cannot now attribute to trial court error her own counsel's strategic decision to forego further questioning of Nurse Sidorov regarding the transit logs.

Additionally, we note that the information Chase's counsel attempted to elicit from Nurse Sidorov immediately prior to defense counsel's objection—the location of Adult Day Services—had been previously obtained on direct examination of Chase. *See* N.T. Trial 4/1/19, at 9 ("Q: Now, where was Adult Day Services situated? Where was it located? A: State Road in Upper Darby."). Accordingly, Chase suffered no prejudice when the court sustained defense counsel's objection.

Judgment affirmed.

Judge Kunselman joins this Memorandum.

Judge McCaffery files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/3/20